IN THE UNITED STATES BANKRUPTCY COURT
IN THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>422 CORPORATION<br><br>Debtor | CASE NO. 05-03276<br><br>CHAPTER 11 |
| UNITED SURETY & INDEMNITY COMPANY<br><br>MOVANT<br><br>v.<br><br>422 CORPORATION<br><br>RESPONDENT | INDEX _____ |

MOTION REQUESTING RELIEF OF AUTOMATIC STAY

TO THE HONORABLE COURT:

Comes Now United Surety & Indemnity Company, hereinafter USIC, through its undersigned counsel and respectfully states and prays:

I. Introduction

1. 422 Corporation, hereinafter Debtor, is a construction contractor to whom Puerto Rico Housing Administration, hereinafter PRPHA, granted a contract, hereinafter the Contract, for $4,762,800. hereinafter the Contract Funds, to reconstruct Las Americas Public Housing, located in Lajas, Puerto Rico, hereinafter the Project.

2. The Contract required from Debtor to submit a performance and payment bond to guarantee: a) Debtor's performance under the Contract; and b) the payment of the labor and materials incorporated in the Project. Based on a previously established

business relationship, and the General Agreement of Indemnity, hereinafter GAI, executed by Debtor in favor of USIC, at the request of Debtor, USIC issued Performance and Payment Bonds number 0283435, hereinafter the Bond, whereby it guarantees, jointly and severally, the aforementioned obligations.

II. <u>The Contract Funds are USIC's sole collateral to the guarantee provided through the Bond and, both, Puerto Rico and Federal law grant USIC a superior right to Contract Funds</u>

3. Under Puerto Rico law, USIC possesses a predominant interest in the funds of the construction project. These funds are in fact the guaranty that the surety has that it would be able to pay the labor and materials not paid by the contractor, and if necessary, to complete the project should the contractor default in its obligations under the construction contract. See <u>Olazábal v. U.S. Fidelity</u>, 103 P.R. Dec. 448, 457 (1975).

4. The surety's guaranty, through the funds of a bonded contract, is equivalent to a lien over them for the service of guaranteeing the execution of the construction contract, as well as the payment of all labor and materials incorporated to the project, because the surety has priority over the contract funds. See Article 1738 of the Puerto Rico Civil ode, P.R. Laws Ann., tit 31 §4912; <u>P.R. Tobacco Mkt. Ass'n v. P.R. & Amer. Ins.</u>, 100 D.P.R. 387 (1972); <u>Sobrinos de Ezquiaga v. Sucn. Hatch</u>, 38 D.P.R. 599 (1928).

5. Further, under Puerto Rico law, a surety's interest in the bonded contract funds is so predominant that it does not need to register its lien before the Puerto Rico Department of State, as provided for in Section 9-104 of Law number 208 of August 17,

2

1995, as amended, Laws of P.R. Ann., tit 19 §2004, and indeed, its interest has priority over any other lien which may have been registered before that agency on the contract funds. P.R. Laws Ann., tit 19 §2110. Therefore, it is beyond cavil that USIC has a predominant interest in the funds of the construction project that it bonded.

6. Moreover, Federal law on this issue also supports the existence of a predominant interest of a surety over the bonded contract funds. See Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S. Ct. 232 (1963) (a surety that completes performance of a project or otherwise pays material men or laborers, possesses valuable equitable subrogation rights to the remaining contract funds, including progress payments and retainage). See also Prairie State National Bank v. United States, 164 U.S. 227, 17 St. Ct. 142 (1896); Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S. Ct. 389 (1908).

7. The Court of Appeals for the First Circuit has stated that the only "security" that a surety possesses is "the opportunity, on default, to finish the job and apply any available funds against its cost of completion." National Shawmut Bank of Boston v. New Amsterdam Casualty Co., 411 F.2D 843, 845 (1st Cir. 1969). The court in National Shawmut held that "upon default, the surety which is obligated to complete the work steps into the shoes of the government. . . [and] is subrogated not only to the right of the government to pay laborers and material men from funds retained out of progress payments (cites omitted) but also to the government's right to apply to the cost of

3

completion the earned by unpaid progress payments in its hands at the time of default." Id. at 848. See also, Admiral Drywall, Inc. v. Cullen, 56 F.3d 4, 5 (1st Cir. 1995) (citing Pearlman, the court held that "[t]raditionally, sureties compelled to pay debts for their principal have been deemed entitled to reimbursement").

8. The United States District Court for the District of Puerto Rico similarly recognized that, pursuant to the laws of Puerto Rico, a surety's interest in contract funds is separate and superior to that of other creditors. Federal Insurance Company v. Constructora Maza, Inc., 500 F. Supp. 246, 250 (D. Puerto Rico 1979). The court in Federal found that "[b]y its facts, reasoning and holding Pearlman is most persuasive," while noting that "[t]hirty years before Pearlman was decided the Supreme Court of Puerto Rico in Sobrinos de Ezquiaga v. Heirs of Hatch, 38 P.R. Dec. 536 (1928), held that a surety by taking charge and completing a project is subrogated in the rights of the contractor… and is entitled to receive money paid for work done by him." Id. at 248, 250. See also American Fire & Casualty Co. v. First National City Bank of New York, 411 F. 2d 755 (1st Cir. 1969) (pursuant to Puerto Rican law, the surety was entitled to be subrogated to the owner's or contractor's rights to unpaid contract balance and retainage, and the surety's right was superior to that of the bank to which the contractor has previously assigned the contract balances and retainage, as retainage is, by its nature, security for protection against failure of completion); Segovia Development Corporation v. Constructora Maza, Inc., 628 F. 2d 724 (1st Cir.1980) (Puerto Rican

4

law is in agreement with the reasoning and holding of Pearlman, and the surety's rights are superior to those of any general creditor).

### III. The Contract Funds are not part of the Estate

9. The court in Segovia held that contract funds do not typically become property of the defaulting contractor until the underlying contract is performed and all laborers, material men, and subcontractors are paid. Id at 727. Similarly, in Centex-Simpson Construction Co. v. Fidelity & Deposit Company of Maryland Centex-Simpson Construction Co. v. Fidelity & Deposit Company of Maryland, 795 F. Supp. 35 (D. Me. 1992), the court, citing Pearlman and National Shawmut as precedent, recognized a surety's priority to contract funds. The Centex-Simpson court recognized that, under 11 U.S.C. § 541, contract funds on bonded projects do not become "property" of the debtor, or therefore the bankruptcy estate, and the completing surety has a superior right to those funds over the bankruptcy trustee. (Emphasis added) Id. at 40-41.

### IV. Debtor defaulted its obligation to provide USIC adequate protection, therefore, Debtor should be prohibited from using the cash collateral and the stay should be lifted to allow USIC administer the Contract Funds

10. Pursuant to 11 U.S.C. §363(a), "cash collateral" is defined as cash in which the estate and an entity other than the estate have an interest. By virtue of USIC's priority interest in the bonded contract proceeds as set forth above, USIC is entitled to adequate protection in its cash collateral pursuant to 11 U.S.C. §§361 and 363.

5

11. 11 U.S.C. § 361 discusses when adequate protection is required under §§362, 363 of the Bankruptcy Code. Section 361 focuses on the financial protection granted to an entity with an "interest" includes equitable interests such as those asserted by USIC. See H.R. Rep. No. 95-595 at 338-40 (1977).

12. 11 U.S.C. §363(e) provides (in relevant part):

Notwithstanding any other provision of this section, at any time on request of an entity that has an interest in property used, sold, or leased, or proposed to be used sold, or leased by the trustee, **the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as in necessary to provide adequate protection of such interest.** (emphasis added)

13. Pursuant to 11 U.S.C. § 363(0)(1), the Debtor has the burden of proof on the issue of adequate protection. In the absence of adequate protection, the use of cash collateral should be prohibited. In re Martin, 761 F.2d 472 (8$^{th}$Cir.1985).

14. Adequate protection serves to protect a creditor's interest in property and prevent a decrease in the value of the property interest during bankruptcy as a consequence of the automatic stay. 2 Collier on Bankruptcy §361.01 at 361-67 (15th ed.1984).

15. If the Debtor is given free reign to expend bonded contract proceeds, there will not be sufficient funds available to USIC to perform its obligations under the bonds, thereby rendering the surety's rights meaningless and exposing it to unfair prejudice.

16. Consistent with the foregoing, on April 22, 2005 Debtor and USIC entered into a stipulation in the captioned case whereby Debtor agreed to provide USIC adequate protection as to the use

of the Contract Funds. As to that effect Debtor agreed to segregate the Contract Funds, which include progress payments, change orders, claims and retainage, and deposit said funds in a separate bank account. Debtor further agreed to use the Contract Funds solely for the payment of: a) labor and materials incorporated in the Project; b) subcontractors that perform work for the Project. USIC accepted that Debtor could use from the Contract Funds up to $20,000 per month to cover Debtor's general overhead expenses; and $25,000. for counsel's fees. Debtor also agree to obtain USIC's prior approval in the event it had to incur in any extraordinary expense related to the Project. <u>Furthermore, Debtor agreed in the aforementioned stipulation to "satisfy in a timely manner its payment obligations to all suppliers, subcontractors and laborers who provide or have provided labor and/or materials for the Project, and all taxes directly related to the Project in accordance to the respective subcontracts or agreements and applicable law."</u> See Docket no. 15.

17. On July 8, 2005 Debtor filed a motion titled Urgent Motion Requesting Order, wherein Debtor squarely admits that it has not paid for materials incorporated in the Project and that it is unable to pay said materials. See paragraph 6 of docket no. 54. At the time the aforementioned stipulation was executed Debtor owed approximately $633,746. for labor and materials supplied for the Project, and Debtor refuses to pay the same.[1] See paragraph 6 of docket no. 54. Consequently, Debtor has

---

[1] After the stipulation was executed USIC has received claims for materials supplied for the Project in the amount of $43,288.28.

7

admitted its default to the adequate protection agreement executed on April 22, 2005 and, therefore, it is exposing USIC to substantial losses.

18. It is important to notice that upon the execution of the aforementioned stipulation Debtor received $416,848.36 from the Contract Funds, and $152,894.75 thereafter. Therefore, since the filing of the petition of the captioned case and the execution of the stipulation Debtor has received and collected to date $569,743.11 from the Contract Funds. In addition, Debtor is holding a check for $103,434.95 which increases the Contract Funds received by Debtor to $673,178.06.

19. Pursuant to article 27.162 of the Insurance Code of the Commonwealth of Puerto Rico, P.R. Laws Ann. Tit. 26 §2716b., USIC must adjust and pay all claims within ninety (90) days. If Debtor does not pay the Project's debts from the Contract Funds, as agreed in the stipulation, USIC will have to pay them in order not to violate the aforementioned article 27.162. Consequently USIC would be providing an indirect and involuntary financing to Debtor, and USIC is neither willing nor contractually bound to provide such indirect and involuntary financing.

20. Pursuant to the provisions of paragraph 19 of the GIA executed by Debtor, USIC is entitled, at its judgment, to control, administer, operate or manage any matter connected with the performance of the Contract with the purpose of minimizing any possible loss or ultimate loss. Therefore, USIC is entitled to administer the Contract Funds to minimize any possible loss.

21. Since Debtor defaulted the adequate protection agreement the stay should be lifted to permit USIC administer the Contract Funds which constitute USIC's sole collateral to the guarantee provided through the Bond, thus to secure that the Contract Funds are employed in the payment of labor and materials supplied for the Project.

V. <u>In the alternative, the stay should be lifted to allow USIC cancel the Bond since the Debtor has no equity in the Bond and USIC would not to extend the financial accommodations on behalf of the Debtor post-petition</u>

22. Surety bonds are financial accommodations within the meaning of Section 365(c) and are not property of the Debtor's estate. <u>In re Adana Mortgage Bankers, Inc.</u>, 12 B.R. 977, 986 (Bkrtcy. N.D. Ga. 1980); <u>In re Edwards Mobile Home Sales, Inc.</u>, 119 B.R. 857, 859 (Bkrtcy. M.D. Fla. 1990). Therefore, Debtor cannot assume the bonds issued by USIC. <u>In re Edwards Mobile Home Sales, Inc.</u>, supra; <u>In re Wegner Farms Co.</u>, 49 B.R. 440, 444 (Bkrtcy. N.D. Iowa 1985). If USIC cannot administer the Contract Funds it will not extend surety credit to Debtor post-petition and will not agree to continue to keep the Bond in effect post-petition. The Debtor must obtain new surety obligations for its post-petition performance and to provide adequate assurance of future performance on the Contract.

23. Based in the foregoing, and in the alternative that USIC cannot administer the Contract Funds, USIC moves this court pursuant to Section 362(d)(2) to lift the automatic stay to permit USIC to cancel the Bond.

9

WHEREFORE, it is respectfully requested from the Court to lift the stay to allow USIC administer the Contract Funds; or in the alternative, to lift the stay to allow USIC cancel the Bond.

CERTIFICATE OF SERVICE: I hereby certify that on this same date a true and exact copy of the foregoing motion was sent via telecopier no. (787) 977-0518 and certified mail return receipt requested to attorney **Alexis Fuentes-Fernández**, Charles A. Cuprill, PSC Law Office, 356 Calle Fortaleza, Second Floor, San Juan, PR 00901; via certified mail return receipt requested to 422 Corporation of Puerto Rico, PMB 442, 2135 Carretera Núm. 2, Suite 15, Bayamón, Puerto Rico 00959; and via regular mail to **Edward Godoy, Esq.**, Assistant US Trustee, Office of the US Trustee, Edificio Ochoa, Suite 301, 500 Calle Tanca, Viejo San Juan, Puerto Rico 00901-1922; **PR Treasury Department, c/o Ma. M. Figueroa y Morgade**, Federal Litigation Division, PO Box 9020192, San Juan, PR 00902-0192; **Departamento de Vivienda de Puerto Rico**, PO Box 11872, San Juan, PR 00922; **Banco Popular de Puerto Rico, c/o Berríos & Long Law Office, PSC**, Capital Center Building, 239 Arterial Hostos Avenue, Suite 900, San Juan, PR 00918; **Efraín Santiago Electrical Contractor, Inc., c/o Roberto Lefranc Romero, Esq.**, Centro de Seguros Building, Suite 407, 701 Ponce de León Ave., Miramar, Santurce, PR 00907-3286; **Comercial Don Benja, c/o Santiago Mari Roca, Esq.**, Biaggi Busquests & Mari Roca, PO Box 1589, Mayagüez, PR 00681; **Associates International, c/o Juan C. Fortuño Fas, Esq.**, PO Box 13786, San Juan, PR 00908.

In San Juan, Puerto Rico, this 11th day of July 2005.

SALDAÑA, SALDAÑA-EGOZCUE & VALLECILLO, CSP
Popular Center Building
208 Ponce de León Avenue
Suite 1420
San Juan, Puerto Rico 00918-1050
Telephones: (787) 758-7565 / (787) 753-4646
Telecopiers: (787) 767-5011 / (787) 753-4747
E-mail: hse@saldanalaw.com

_____
HECTOR SALDAÑA-EGOZCUE
USDC-PR 123807

188-1008